AO 106 (Rev. 01/09) Application for a Search Warrant

UNITED STATES DISTRICT COURT
for the
Western District of Arkansas
Fayetteville Division

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br>The premises located at 906 South 17th Street, Rogers, Arkansas 72758 | ) ) ) ) ) Case No. 5:21cm57 |

**APPLICATION FOR ANTICIPATORY SEARCH WARRANT**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the Western District of Arkansas *(identify the person or describe property to be searched and give its location)*:

**See Attachment A**

The person or property to be searched, described above, is believed to conceal **upon the occurrence of the anticipated delivery of a package containing a stolen checks from the mail**

*(identify the person or describe the property to be seized)*: **See Attachment B**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

&boxtimes; evidence of a crime;

&boxtimes; contraband, fruits of crime, or other items illegally possessed;

&boxtimes; property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of possession of stolen mail, in violation of Title 18, United States Code, Section 1708.

&boxtimes; Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

David L. Barrett, U.S. Postal Inspector
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/16/21 @ 2:04pm

*Judge's signature*

City and state: Fayetteville, Arkansas

Christy D. Comstock, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ) | |
| THE PREMISES LOCATED AT ) | |
| 906 S. 17th STREET ) | Case No. |
| ROGERS, ARKANSAS ) | |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR AN ANTICIPATORY SEARCH WARRANT**

I, David L. Barrett, a Federal Agent for the United States Postal Inspection Service, being duly sworn, depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of the premises located at 906 South 17th Street in Rogers, Arkansas, located in the Western District of Arkansas (which premises is more particularly described and depicted in Attachment A, and is referred to hereinafter as the "**SUBJECT PREMISES**") for fruits, evidence, and instrumentalities for a violation of Title 18, United States Code, Section 1708 Possession of Stolen Mail, and other federal laws.

2. I have been a United States Postal Inspector for over eighteen years. During that time, I have worked on numerous federal criminal investigations, and have worked with other agents, police officers, and law enforcement personnel who have extensive criminal investigative experience and training. I have conducted investigations which involve violent crimes, illegal narcotics, stolen property, and identify theft. Through training and participation in criminal investigations, I have become familiar with and have participated in electronic surveillance, visual surveillance, questioning of witnesses, and the use of search warrants and undercover agent. I was

1

a police officer in the states of Arkansas and Oklahoma for over seven years. I am a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure, and I am authorized by Rule 41(a) of the Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants.

3. The facts and statements contained in this affidavit are based in part on information received from other law enforcement agents and analysis based on my experience, training, and background as a law enforcement officer and Federal Agent with the United States Postal Inspection Service. Because this affidavit is being submitted for the limited purpose of securing authorization for the requested search warrant, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish the necessary foundation for the requested warrant. The descriptions of communications contained herein are not intended as exact transcripts, but are intended to accurately summarize the nature and content of communication between the persons identified.

4. Your affiant respectfully submits this affidavit in support of an application for a warrant to search the SUBJECT PREMISES. Based on my training and experience and the facts as set in this affidavit, there is probable cause to believe that instrumentalities, fruits, and evidence of a violation or violations of Title 18, United States Code, Section 1708, Possession of Stolen Mail, will be found within the SUBJECT PREMISES.

## IDENTIFICATION OF THE PREMISES TO BE SEARCHED

5. The SUBJECT PREMISES is located at 906 S. 17th Street, Rogers, Arkansas, in the Western District of Arkansas. The SUBJECT PREMISES is a tan brick ranch style house with white porch railings, a one-car garage, and a composite shingle roof. The house number is clearly displayed on a mailbox, as shown in Attachment A.

## THE INVESTIGATION

6. On or about September 9, 2021, a United States Postal Service (USPS) letter carrier received a USPS Priority Mail Express package, EJ 638 761 918 US, which was addressed to, "Randy Davis," at 906 S. 17th Street in Rogers, Arkansas. The letter carrier did not recognize the name as receiving mail at the residence, so the package was scanned, "ADDRESSEE UNKNOWN," and held at the Rogers, Arkansas Post Office.



7. On or about September 10, 2021, USPS Supervisor Jeff Welch (Rogers, Arkansas Post Office) received a phone call from an unknown male who stated he sent the parcel and wanted to know why it had not been delivered. The male could not tell Welch who the package was addressed to; he could only provide the tracking number and addressee's address. The male was told the reason why the parcel was being sent back to the sender. The caller requested the package to not be returned to the return address, but to be held at the originating post office for someone to pick up.

3

8. On or about September 10, 2021, USPS Supervisor Jeff Welch received a second call from the unknown male. Welch stated he recognized the male's voice from the previous call. Welch said the male identified himself as the recipient and asked for the package to be delivered to the SUSPECT PREMISES.

9. On or about September 10, 2021, the Rogers, Arkansas Postmaster, Shane Blackburn, and Supervisor Jeff Welch contacted Your Affiant and advised him of the incident. Your Affiant requested the parcel to be sent to Your Affiant for investigation. Postmaster Blackburn provided a phone number for the unknown male to Your Affiant.

10. On or about September 14, 2021, Your Affiant began an investigation of the parcel. Your Affiant utilized a law enforcement database and found no record of the sender, "Sterling Granger," associated with 4169 Utah St., St. Louis, Missouri.

11. On or about September 14, 2021, Your Affiant called the phone number, (479) 640-1841, for the unknown male who called the Rogers, Arkansas post office inquiring about the package. The unknown male indicated he was, "Randy Davis." Your Affiant asked for permission to open the package. The unknown male stated there were checks in the parcel and gave Your Affiant permission to open the package. Your Affiant opened the parcel and found five personal checks from three separate bank accounts located in St. Louis, Missouri. The five checks were made payable to various unrecognized individuals. The unknown male asked if the package could be delivered tomorrow, and Your Affiant told him it would be delivered tomorrow.

12. On or about September 14, 2021, Your Affiant contacted G.F., who is one of the account holders on US Bank check, number 9185. G.F. said she placed the aforementioned check in the mail on or about September 6, 2021. G.F. said she placed the check into a USPS collection box at the processing plant post office in St. Louis, Missouri.

13. On or about September 14, 2021, Your Affiant checked USPS business records and discovered the SUBJECT PREMISES has received 13 packages from St. Louis since October 2020.

14. On or about September 14, 2021, US Postal Inspector Rhonda Maratea made contact with M.F., who is the account holder on US Bank checks 4116 and 4117. M.F. said he placed the aforementioned checks in the mail on or about September 6, 2021. M.F. said he placed the checks into a collection box at the McKenzie Point Post Office in St. Louis, Missouri.

15. On September 16, 2021, a US Postal Inspector, acting in an undercover capacity as a USPS letter carrier, will attempt to deliver the SUSPECT PACKAGE to the SUSPECT PREMISES. This search warrant will only be executed if the parcel is accepted and someone takes the SUSPECT PACKAGE into the SUSPECT PREMISES.

16. Based on my knowledge, training, and experience, Your Affiant recognizes that the possession of stolen checks is contraband which indicates that the suspects intend to defraud the account holder by counterfeiting or chemically altering the checks to change the beneficiary and cash or deposit into another account.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

17. Based on your Affiant's knowledge, training, and experience, your Affiant knows that cell phones, tablets and computer hardware, software, documentation, passwords, and data security devices may be important to a criminal investigation in two distinct respects: (1) the items themselves may be instrumentalities, fruits, and/or evidence of crime; and/or (2) items may have been used to collect and store information about crimes (in the form of electronic data). Thus, Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize cell phones, tablets and computer hardware, software, documentation, passwords, and data security

devices which are: (1) instrumentalities, fruits and/or evidence of crime; and/or (2) storage devices for information about crimes.

18. Based on my knowledge, training, and experience, I know it is common practice for individuals to use personal computers and other personal electronic storage devices to maintain records and communications regarding stolen mail. I know that computers and mobile phones act as computer systems capable of financial record-keeping functions.

19. Based on my knowledge, training, and experience, I believe that persons engaged in stealing checks from the mail and possessing stolen mail commonly maintain electronic records and files containing images of checks or other personal identifiers of the victims of mail theft. Such electronic devices use the Internet via wire or wireless connection, which often travel from one computer to another across state lines. Persons committing these crimes related to stealing checks form the mail will possess and maintain electronic devices to communicate with others, maintain records, and to commit the fraud.

20. As described above and in Attachment B, this application seeks permission to search for records that might be found on the SUBJECT PREMISES, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

21. *Probable cause.* I submit that if a computer or storage medium is found on the SUBJECT PREMISES, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

    a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been

downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

22. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the PREMISES because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

   b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training

8

and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data

typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend

on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

23. *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

> e. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months,

depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

f. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

g. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

24. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

25. Because more than one person may share the SUBJECT PREMISES as a residence, it is possible that the PREMISES will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

## CONCLUSION

26. For the reasons set forth above, there is probable cause to believe that evidence of violations of Title 18, United States Code, Section 1708 (possession of stolen mail) will be located within the SUBJECT PREMISES, as described and depicted in Attachment A.

27. Therefore, I respectfully request this Court to issue a warrant to search the SUBJECT PREMISES, as described and depicted in Attachment A, to seize the evidence, fruits, and instrumentalities described in Attachment B.

I declare, under penalty of perjury, that the statements above are true and correct to the best of my knowledge and belief.

DAVID BARRETT
U.S. POSTAL INSPECTOR

Subscribed and sworn to before me this 16th day of September, 2021.

HON. CHRISTY D. COMSTOCK
UNITED STATES MAGISTRATE JUDGE

13

## ATTACHMENT A

## Property to Be Searched

The SUBJECT PREMISES 906 S. 17th Street, Rogers, Arkansas, in the Western District of Arkansas. The SUBJECT PREMISES include a tan brick ranch style house with white porch railings, and a one-car garage.





14





## ATTACHMENT B

All records within the SUBJECT PREMISES described in Attachment A that relate to a violation of possession of stolen mail, including, but not limited to the following:

1. The package delivered by U.S. Postal Inspector David Barrett containing stolen checks from the mail;
2. Any additional stolen mail or records of stolen mail matter found within the premises;
3. Any records and information relating to the identity or location of the suspects;
4. Any records and information relating to a scheme to commit mail theft;
5. Any documents, receipts, notes, bank records, personal identifying information, and correspondence relating to victims of mail theft;
6. Any digital media device, including but not limited to: cellular phone(s), tablet(s), laptop computer(s), desktop computer(s) belonging to the suspects and/or the owner of the device associated with number (479) 640-1841, for the following records:
    a. Communications or data, such as emails, text messages, notes, instant messaging, audio files or videos tending to indicate efforts to obtain or store mail, personal identifiers, routing or bank account numbers, and any other victim information;
    b. Communications or data, including contacts, text messages, and call history, tending to identify criminal associates or plan criminal activities;
    c. Images of stolen mail, checks, bank records, or any other victim information;
    d. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

7. Any information related to sources of stolen checks and mail (including names, addresses, phone numbers, or any other identifying information);

8. Any other contraband or instruments of crimes relating to stolen mail matter, including materials and devices used to alter/counterfeit checks from the mail.